UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACOB PINARD; MARK LIPKE;
GRIFFIN LINN; HARRY MILLS;
TYSON JARVI; TRAVIS JEFFERS;
NATHAN WHITE; and D.J. CRAWFORD,

        Plaintiffs,

    v.

CLATSKANIE SCHOOL DISTRICT
6J, a public body; JEFF BAUGHMAN;
MICHAEL CORLEY; LES WALLACE; and
EARL FISHER,

        Defendants.

Civil No.  03-172-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    This case is before the court on summary judgment after a partial reversal and remand from the Ninth Circuit Court of Appeals. *See Pinard v. Clatskanie Sch. Dist. 6J*, 319 F. Supp. 2d 1214 (D. Or. 2004) (*Pinard I*), *rev'd*, 446 F.3d 964 (9th Cir. 2006) (*Pinard II*), *amended by*, 467 F.3d 755 (9th Cir. 2006) (*Pinard III*).

1   - OPINION AND ORDER

I.   **BACKGROUND**

Seven years ago today, a group of student athletes at Clatskanie High School signed a petition asking their varsity basketball coach, Jeff Baughman, to resign.  That petition set in motion a series of events culminating in the permanent suspension of the students from the basketball team.  A narrative is set forth in *Pinard III*, and is not rehashed here.  Nevertheless, in evaluating the questions before it, the court has examined the entire record in this matter.  This court's further discussion of alleged facts germane to the issues on remand is incorporated with the substantive analysis of the law.

This court granted summary judgment in favor of defendants on June 3, 2004.  Plaintiffs appealed, and on May 1, 2006, the Ninth Circuit published *Pinard II*, partially remanding the matter.  No petition for rehearing was filed, and the parties moved forward with briefing before this court.[1]  However, the mandate did not issue, and on October 30, 2006, after requesting further briefing, the appellate panel *sua sponte* amended its opinion and issued *Pinard III*.

As a result of this tangled procedural web, the court now addresses a collection of filings related to defendants' June 2006 Supplemental Motions for Summary Judgment [74].  Because those motions were filed in the interlude between *Pinard II* and *Pinard III*, the parties supplemented the briefing in January 2007.[2]  In August 2007, the parties filed a final round of briefs addressing the relevance of the Supreme Court's decision in *Morse v. Frederick*, 127 S. Ct. 2618 (2007).

---

[1] Defendants' Supplemental Motions for Summary Judgment [74], plaintiffs' Memorandum in Opposition [85], and defendants' reply [87].

[2] A motion to strike portions of the materials filed with that briefing is also pending [112].

## II.   QUESTIONS ON REMAND

In its analysis, the Ninth Circuit differentiated between the isolated acts of refusing to ride the bus and petitioning against Baughman.  Assuming without deciding that the refusal to get on the bus was conduct protected by the First Amendment, the panel held that "school officials could permissibly discipline the players for this disruptive conduct."  *Pinard III*, 467 F.3d at 770 (applying *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)).  Thus, the panel cut off any claims based solely on the bus boycott, while leaving open the question of "whether the plaintiffs' permanent suspension from the basketball team . . . was wholly or partly for petitioning against Baughman in the first place."  *Id.*  The panel also gave leave for the parties to address to this court the question of whether the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), should be applied here.  *Pinard III*, 467 at 759 n.1.  The court rejects defendants' request that it rule on further issues outside the scope of the mandate on remand.  *See In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895) ("When a case has once been decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled.");  *United States v. Kellington*, 217 F.3d 1084, 1092-95 (9th Cir. 2000) (same).

### A.   First Amendment Retaliation

The Ninth Circuit explained that the correct test to apply in evaluating plaintiffs' First Amendment retaliation claim is laid out in *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001) and *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999).  *See Pinard III*, 467 F.3d at 770.  Under the *Mendocino/Keyser* test, for plaintiffs to succeed at trial, they must prove that they were: (1) "engaged in a constitutionally protected activity," (2) that the defendants' "actions would chill a person of

3   - OPINION AND ORDER

ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendants' conduct." *Id.* (citing *Mendocino*, 192 F.3d at 1300-01 and *Keyser*, 265 F.3d at 750). If "plaintiff[s] establish[] the elements of a retaliation claim, 'the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.'" *Keyser*, 265 F.3d at 750. But, "the defendants must show more than that they 'could have' punished the plaintiffs in the absence of the protected speech; instead, 'the burden is on the defendants to show' through evidence that they 'would have' punished the plaintiffs under those circumstances." *Pinard III*, 467 F.3d at 770 (quoting *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 512 (9th Cir. 2004)).

The Ninth Circuit has already determined that "[t]he petition and complaints against Baughman were constitutionally protected, and the defendants' suspension of the plaintiffs would lead ordinary student athletes in the plaintiffs' position to refrain from complaining about an abusive coach in order to remain on the team." *Id.* at 771. Thus, the only remaining inquiry for this court is

> whether, viewing the evidence in the light most favorable to the plaintiffs, the record would permit a jury to infer that Corley punished the plaintiffs not simply for boycotting the game but also (or only) in retaliation for their having complained about Baughman and requested his resignation in the first place. If so, the defendants are not entitled to summary judgment unless they can show that they would have imposed a permanent suspension even in the absence of the plaintiffs' petition and complaints against Baughman.

*Id*. In making this inquiry on summary judgment, the court must view the facts and draw inferences in the manner most favorable to the plaintiffs. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

      **1.**     **Substantial or Motivating Factor**

"As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence, and involves questions of fact that normally should be left for trial." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citation omitted). The Ninth Circuit has identified at least three "nonexclusive categories" of evidence that are probative of motive: "(1) proximity in time between the protected speech and the alleged retaliation; (2) the [defendants'] expressed opposition to the speech; and (3) other evidence that the reasons proffered by the [defendants] for the adverse . . . action were false and pretextual." *Id.* (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002) (citing *Keyser*, 265 F.3d at 751-52)).

    a.  **Proximity in Time**

The students signed the petition on February 12, 2001. Team co-captain Christopher Somes delivered the petition to Baughman the next morning. Shortly thereafter, Principal Michael Corley and Athletic Director Lester Wallace called the students in for a meeting where the petition was discussed. The students refused to travel to the game that same evening. On February 14, 2001, plaintiffs, Somes, and several parents met with Corley and Wallace. Parents Dave Crawford and Erik Lipke were in attendance, and submitted affidavits testifying that Corley announced that "all of the players who signed the petition were permanently suspended from the team." Thus, less than two days after engaging in the protected activity of petitioning and airing complaints, the students were subjected to the adverse action. Such close temporal proximity between events clearly supports an inference that the players were suspended at least in part for their petition and complaints.

Defendants argue that the intervening bus boycott cuts off any inference of a linkage between the two events. As an initial matter, the court observes that to accept this argument

5   - OPINION AND ORDER

would be to accept that the Ninth Circuit's *Tinker* holding on the boycott vitiates the substantial factor inquiry on the petition–making a remand unnecessary in the first place. The murky facts surrounding the origins of the boycott and its connection to the petition give this court pause, as they likely did the Ninth Circuit panel. The students have presented testimony that Corley told them that they would have to choose to either mediate their dispute with Baughman through him, or not get on the bus and not play in the game that evening. Corley also told them that he supported Baughman, making this a Hobson's choice for the students. Although the boycott itself is an independent basis for punishment, it can reasonably be inferred that Corley's responses at the meeting had a role in precipitating the boycott. Further, while the ultimate adverse action was after the boycott, the continuum of events cannot fairly be viewed as somehow split between pre- and post- boycott for the purposes of inferring motive, particularly when all of the events occurred during a very brief time span.

          **b.**     **Opposition to the Speech**

Defendants argue that there is no evidence that Corley, who took the alleged retaliatory action, opposed the students' speech. However, defendants ignore several important pieces of evidence. Gary Points, an assistant coach, testified that Baughman called him at approximately 9:30 a.m. on February 13, 2001, presumably after speaking with Corley and leaving the school for the day. Baughman told Points that he had spoken with Wallace and Corley, and that they were recommending that he "tell the players that they either get on the bus and play or if they choose not to get on the bus to turn in their uniform." This evidence clearly suggests that Corley opposed the students' speech. Further, it suggests that Baughman had input into Corley's decision process.

Plaintiffs have also adduced evidence that around the time of the basketball team incident, Corley was a candidate for the job of superintendent of the school district. The gateway to that job was a three-person screening committee, of which Baughman was a member. There can be no serious dispute that Baughman opposed the students' speech. Further, it is not unreasonable to infer that Corley would align himself with Baughman, not only because of his role a teacher and member of Corley's staff, but also because of Corley's potential personal stake in supporting Baughman. Such an inference does not require accepting "a full-blown conspiracy" as defendants allege. Indeed, the students testified that Corley told them that he would support Baughman in the dispute during their meeting.

          c.      **Pretext**

Plaintiffs argue that Baughman and Corley planned to trap the students by offering them the Hobson's choice described above. They rely on the telephone call between Baughman and Points to show that there was discussion between Baughman, Corley, and Wallace about how to deal with the petition, and about the eventual ultimatum issued back to the students by Corley at the meeting on February 13. Even if there was no explicit plan to trap the students, there is evidence that Corley and Wallace knew or should have know that they could have averted the boycott. By the time they met with the students, they both knew that Baughman had left school for the day, and could have surmised that he would not return to coach the game. At some point well before the 4:45 p.m. time that the students were to board the bus, Corley knew that Baughman would not be coaching the game that evening. Nobody made any effort to inform the students of this fact–a fact that Corley readily could have deduced would have led to the students choosing to play in the game that evening. There is sufficient evidence to support the theory that Corley both proposed the idea of a boycott and also withheld information that would have

7   - OPINION AND ORDER

averted the boycott. While the boycott has been adjudicated to be a legitimate basis for discipline, if that event was orchestrated by Corley in response to the petition, it could still be deemed pretextual.

### d. Failure to Suspend Somes

In addition to their arguments on the *Keyser* evidence categories, defendants claim that the treatment of Somes shows that the students were suspended solely because of the boycott. Somes was the only student to sign the petition and then play in the game. Defendants have submitted an affidavit from his father, Frank Somes, stating that his son was not suspended, and instead quit the team several days later. This evidence shows that at least in the case of Somes, signing the petition was not sufficient to cause Corley to suspend him from the team. However, Frank Somes was an assistant athletic director at the school at the time. It is not unreasonable to infer that as a result of his existing relationship with the basketball team and the school that his son may have been treated differently. Further, even if the court accepts, contrary to the summary judgment standard, defendants' inference that this evidence shows that the petition was not the basis for the suspensions, it still does not resolve the question of whether the petition "was wholly or partly" a motivating factor in the suspension of the students.

\* \* \*

Under *Keyser*, plaintiffs need not show evidence falling into each of the categories to meet their burden and survive summary judgment. Nonetheless, they have submitted circumstantial evidence showing that the question of whether their petition was a substantial or motivating factor in their punishment is one for the jury.

### 2. *Mt. Healthy* Defense

Under *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 286-87 (1977), defendants can escape liability for First Amendment retaliation if they can prove that the students would have been suspended absent the petition and complaints.  As discussed above, there is an unresolved factual dispute about the causal relationship between the petition, the meeting with Corley, and the boycott.  In this case, absent the petition and meeting, there may not even have been a boycott.  For that reason alone, it is not possible for defendants to meet their burden under *Mt. Healthy* on summary judgment.

Defendants argue that the students would have been suspended permanently from the basketball team for refusing to attend a game.  They support this claim with affidavits from past Athletic Director Ron Puzey, Wallace, Corley and Baughman.  Each asserts that, if they had been confronted by a stand-alone boycott, they would have permanently suspended the students.  None of these affidavits are supported by evidence that this has ever been the means for dealing with student misconduct in the past.  When student Nathan White arrived to school late and missed the bus, he received a one-game suspension.  When student Jacob Pinard was caught drinking alcohol, he was suspended from the baseball team for two weeks, but was allowed to return to the team and received his varsity letter.  Defendants could produce no record of a student having been permanently suspended for missing a game.  Defendants self-serving, conclusory affidavits offer little more than post hoc rationalization and are not sufficient to meet their burden on summary judgment.

### B.      Applicability of *O'Brien*

Recognizing the potential overlap between various First Amendment doctrines, the Ninth Circuit gave the parties leave to address whether the test set out in *United States v. O'Brien*, 391 U.S. 367 (1968), is applicable here. The Ninth Circuit suggested that the type of evidence that would be probative in performing this analysis includes "whether the school's policy was content-neutral, whether it was followed when the students were suspended, why the students were suspended, and what incidental restrictions on free speech resulted from the school's policy." *Pinard III*, 467 F.3d at 759 n.1. The record stands largely unchanged from that on appeal, particularly on the issue of the school's alleged policies related to student athlete conduct. There is no evidence that the defendants had, were aware of, or relied on, any particular policy as a basis for punishing the students. As discussed above, what circumstantial evidence there is supports an inference that there were no set rules or policies dictating that the students would be permanently suspended. For those reasons, the court declines to apply *O'Brien*.

### III.    CONCLUSION

Defendants suggest that once the camel gets his nose in the tent, school administrators will be powerless to rein in the actions of students who simply preface their disruptive behavior with a petition. Those are not the facts confronting this court. Here, plaintiffs have made a showing, in sufficient fashion to survive summary judgment, that the behavior that allegedly serves as the basis for their punishment was induced by defendants in response to constitutionally protected speech. By allowing this case to proceed to trial, this court simply holds that school officials, in response to protected speech, may not goad or trick students into sanctionable behavior that the evidence suggests they otherwise would not have engaged in.

Defendants' Supplemental Motions for Summary Judgment [74] and Motion to Strike Portions of the Declaration of Maureen Linn [112] are DENIED. The parties are ordered to meet and confer, and by March 17, 2008, to file a joint status report and proposed scheduling order for further pre-trial proceedings and trial in this matter.

IT IS SO ORDERED.

DATED this  12  day of February, 2008.

    /s/ Ancer L. Haggerty
Ancer L. Haggerty
United States District Judge